1
2
3
4
5
6
7       UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF WASHINGTON
8                      AT SEATTLE

9   THERESSA RANKINS, individually and on
    behalf of all others similarly situated,          NO.
10
                                                       **CLASS ACTION COMPLAINT**
11                    Plaintiff,

12          v.

13  CARENEXA, LLC f/k/a BLACKFLY
    INVESTMENTS, LLC, d/b/a MOLECULAR
14  TESTING LABS, and NTIRETY, INC.,

15                    Defendant.

16
17                   **CLASS ACTION COMPLAINT**

18          Plaintiff Theressa Rankins ("Plaintiff") brings this Class Action Complaint, against

19  Defendants CareNexa, LLC f/k/a Blackfly Investments, LLC d/b/a Molecular Testing Labs

20  ("MTL") and Ntirety, Inc. ("Ntirety") (collectively, Defendants"), and each of their present,

    former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, members,
21
    and/or other related entities, and upon personal knowledge as to their own actions, and
22
    information and belief as to all other matters, allege as follows:
23

24

25

26

CLASS ACTION COMPLAINT - 1

**INTRODUCTION**

1. This action arises out of the public exposure of Plaintiff's and Class Members' Personally Identifying Information[1] ("PII" or "Private Information"), which was in Defendants' possession during a cyberattack on or about March 7, 2025, to on or about March 11, 2025, caused by Defendants' collective failures to adequately safeguard that Private Information ("Data Breach").

2. According to MTL, the Private Information compromised in the Data Breach includes patients' dates of birth, dates of collection, email addresses, genders, addresses, names, phone numbers, and tracking numbers.[2]

3. Defendant MTL provides clinical diagnostic laboratory services, offering infectious disease, toxicology, targeting sequencing, single-nucleotide polymorphism genotyping, immune profiling, and other testing services.[3]

4. Defendant Ntirety is an IT solutions provider offering services that manage infrastructure, security, data, and compliance for clients, including MTL.[4] Upon information and belief, MTL retained Ntirety to host, support, manage, and secure against unauthorized access and cyberattacks the computer systems that were ultimately accessed in the Data Breach.

5. Defendants failed to undertake adequate measures to safeguard the Private Information of Plaintiff and the proposed Class Members.

6. Although Defendants purportedly discovered the Data Breach on or about March 11, 2025, they failed to immediately notify and warn Plaintiff and Class Members,

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8). To be clear, according to Defendants, not every type of information included in that definition was compromised in the Data Breach.

[2] See Notice of Data Incident, attached hereto as **Exhibit A**.

[3] https://moleculartestinglabs.com/services/ (last visited October 21, 2025).

[4] *About Ntirety*, https://www.ntirety.com/company/ (last visited October 21, 2025).

CLASS ACTION COMPLAINT - 2

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

waiting over *seven* months, until October 13, 2025, when MTL provided written notice to Plaintiff and the Class.

7. Upon information and belief, Plaintiff's Private Information is available on the Dark Web as a result of the Data Breach.

8. As a direct and proximate result of Defendants' failures to protect current and former patients' sensitive Private Information and warn them promptly and fully about the Data Breach, Plaintiff and the proposed Class Members have suffered widespread injury and damages necessitating Plaintiff seeking relief on a class wide basis.

**PARTIES**

9. Plaintiff Theressa Rankins is a natural person, resident and citizen of Forest City, North Carolina where she intends to remain. Plaintiff Rankins is a former patient of MTL, and a Data Breach victim.

10. Defendant MTL is a Limited Liability Company organized and existing under the laws of the State of Washington, with its principal place of business located in Vancouver, Washington.

11. Defendant Ntirety is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Chicago, Illinois.

**JURISDICTION & VENUE**

12. This Court has original jurisdiction over this action under the Class Action Fairness Act 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, at least one member of the class is a citizen of a state different from Defendants, namely Plaintiff, a citizen of North Carolina, and Defendants MTL and Ntirety are citizens of different states. *See* 28 U.S.C. § 1332(a)(1).

13. This Court has personal jurisdiction over Defendants because Defendant MTL's principal place of business is in Washington, and Defendants regularly conduct business and

CLASS ACTION COMPLAINT - 3

1    enter into contracts within the State of Washington.

2        14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because MTL's

3    principal place of business is in this District and a substantial part of the events, acts, and

4    omissions giving rise to Plaintiff's claims occurred in this District.

5                            **BACKGROUND FACTS**

6    **A.  Defendants**

7        15.    Defendant MTL offers "…high-complexity molecular testing with an

8    extensive portfolio of services, including infectious disease, toxicology, targeted

9    sequencing, single-nucleotide polymorphism (SNP) genotyping, and high-resolution

10   immune profiling".[5]

11       16.    Defendant Ntirety offers "comprehensive solutions for modern IT" by

12   "…help[ing] organizations manage and secure today's complex IT environment. [Ntirety's]

13   comprehensive managed services cover infrastructure, security, data, and compliance,

14   connecting mission-critical data across highly secure, available, and resilient environments."

15   Ntirety provides services to over 2,500 enterprise customers, including Defendant MTL, and

16   holds over 650 IT and security certifications.[6]

17       17.    Defendant MTL collects and stores Plaintiff's and the proposed Class Members'

18   Private Information on an IT Network managed by Ntirety, including but not limited to their

19   dates of birth, dates of collection, email addresses, genders, addresses, names, phone numbers,

20   and tracking numbers.

21       18.    When Defendants collect this Private Information, they promise to use

22   reasonable care to protect and safeguard the Private Information from unauthorized disclosure.

23   Plaintiff and Class Members would not have provided their Private Information to Defendants

24   had they known that those Defendants would not employ data security measures sufficient to

25   ───────────────

26   [5] https://moleculartestinglabs.com/services/ (last visited Oct. 22, 2025); see also https://moleculartestinglabs.com/who-we-serve/ (last visited Oct. 22, 2025).

[6] *About Ntirety*, https://www.ntirety.com/company/ (last visited Oct. 22, 2025).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

protect the confidentiality of their Private Information and that Defendant MTL would choose a vendor like Ntirety that would store Plaintiff's and Class Members' Private Information on insecure computer systems.

19.    Defendants maintain privacy policies in which they promise to institute certain data security measures to maintain the confidentiality of individuals' Private Information.[7]

20.    Despite their alleged commitments to securing sensitive patient data, Defendants did not follow industry standard practices in securing Plaintiff's and Class Members' Private Information and failed to protect the Private Information of Plaintiff and the proposed Class Members from unauthorized disclosure in the Data Breach. In particular, Ntirety did not follow industry standard cybersecurity practices to reasonably safeguard the Private Information from a cyberattack.

**B. Defendants Fail to Safeguard Private Information—the Data Breach**

21.    On information and belief, according to MTL, beginning on or around March 7, 2025, and to on or about March 11, 2025, MTL experienced a cyberattack to its computer information technology systems managed by Ntirety by an unauthorized threat actor, which resulted in the unauthorized disclosure and exfiltration of Plaintiff's and Class Members' Private Information, including their dates of birth, dates of collection, email addresses, genders, addresses, names, phone numbers, and tracking numbers—the Data Breach.[8]

22.    Nevertheless, it was over *seven* months before any of the Defendants informed affected Class Members of the unauthorized disclosure of their Personal Information in the Data Breach, until October 13, 2025 when MTL provided written notice to Plaintiff and the

---

[7] *Privacy Policy*, Molecular Testing Labs, https://moleculartestinglabs.com/privacy-policy/ ("We have implemented measures designed to secure your Personal Information from accidental loss and from unauthorized access, use, alteration and disclosure. Molecular uses secure servers behind firewalls to store information, and payment transactions and personally identifiable information are encrypted using SSL technology.") (last accessed Oct. 22, 2025); see also *Privacy Policy*, Ntirety, https://www.ntirety.com/privacy-policy/ ("Information collected by the technologies described in this Privacy Notice is protected by SSL 128 bit encryption technology during transmission. Information kept by us in our business is protected using industry standard security measures.") (last accessed Oct. 22, 2025).

[8] Notice of Data Incident, attached hereto as Exhibit A.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1  Class.

2      23.    On or about October 13, 2025, Defendant MTL began sending written notice of

3  the Data Breach to current and former patients impacted by the Data Breach, including

4  Plaintiff, and the proposed Class Members.[9] The Notice of Data Incident ("Notice") stated:

5          **What Happened** On or about March 11, 2025, discovered that a data

6          hosting and security vendor retained by MTL had experienced a cyber
        security incident impacting MTL systems and data. We promptly

7          launched an investigation, engaged a national cybersecurity firm to assist
        in assessing the scope of the incident and took steps to mitigate the

8          potential impact to our community. Unfortunately, these types of
        incidents are becoming increasingly common and organizations with

9          some of the most sophisticated IT infrastructure available continue to be
        affected. A third-party forensic investigation completed on September

10          22, 2025 determined the incident occurred on or about March 7, 2025, to

11          on or about March 11, 2025.

12          **What Information Was Involved** Following a diligent review of the
        impacted data set, we determined the elements of your personal

13          information that may have been impacted may have included, and
        potentially were not limited to, your Date of Birth; Date of Collection;

14          Email; Gender; Patient Address; Patient Name; Phone Num; Tracking
        No. Please note that we have no evidence at this time that any of your

15          personal information has been or will be misused as a result of the

16          incident[10]

17      24.    The information involved in the Data Breach included dates of birth, dates of

18  collection, email addresses, genders, addresses, names, phone numbers, and tracking

19  numbers.[11]

20      25.    MTL's Data Breach Notice did not further elaborate on the nature or extent of

21  the Data Breach, omitting its scope or size.

22      26.    Defendants' conduct, by acts of commission or omission, caused the Data

23  Breach, including: Defendants MTL's and Ntirety's failures to implement best practices and

24

25  ───────────────
  [9] *Id.*

26    [10] *Id.*

  [11] *Id.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

comply with industry standards concerning computer system security to adequately safeguard Plaintiff's and Class Members' Private Information, allowing Private Information to be accessed and stolen, and by failing to implement security measures that could have prevented, mitigated, or timely detected the Data Breach, and by failing to adequately train its employees on cybersecurity policies, enforce those policies, or maintain reasonable security practices and systems, resulting in the Data Breach; as well as Defendant MTL's failure to ensure that their third-party vendor, Defendant Ntirety undertook these data security measures and appropriate employee training, prior to obtaining Plaintiff's and the Class Members' Private Information. In particular, prior to the Data Breach, MTL contracted with Ntirety to monitor the MTL network around the clock, with an escalation process for critical issues and alerts. Ultimately, the systems Ntirety put in place were inadequate to prevent, detect or alert to the Data Breach until after it had happened.

27. Had Defendant MTL audited and reviewed Defendant Ntirety's data security measures they would have known that entrusting the Private Information of their patients to these third-party providers created a foreseeable risk of the compromise of that Private Information. Defendant MTL had a duty to ensure that any third-party service provider had properly implemented and employed reasonable data security measures necessary to protect the Private Information of healthcare patients.

28. On information and belief, more fully articulated below, Plaintiff's and the members of the proposed Class Members' Private Information, was unauthorizedly disclosed to, and actually "exfiltrated by," third-party cybercriminals in the Data Breach, has now or will imminently be posted to the Dark Web for public viewing and use, in the public domain, and/or utilized for criminal and fraudulent purposes and misuse.

**C. Plaintiff Theressa Rankins' Experiences**

29. Plaintiff Theressa Rankins is a former patient of Defendant MTL, who received treatment from Defendant MTL.

CLASS ACTION COMPLAINT - 7

30.     As a condition of receiving Defendant MTL's medical services, Plaintiff was required to provide her Private Information to Defendant MTL, which it then provided to Defendant Ntirety, including but not limited to Plaintiff's date of birth, dates of collection, email address, gender, address, name, phone number, and tracking number.

31.     Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted Private Information over the internet or other unsecured sources.

32.     Plaintiff stores any documents containing her Private Information in a safe and secure location, and she diligently chooses unique usernames for her passwords and online accounts.

33.     In entrusting her Private Information to MTL, Plaintiff believed that, as part of the payments for medical treatment and services, MTL, and any vendors it chose like Ntirety, would adequately safeguard that information. Had Plaintiff known that MTL and its vendor Ntirety would not utilize reasonable data security measures, and that MTL did not ensure that third-party vendors utilized reasonable data security measures, Plaintiff would not have entrusted her Private Information to MTL or would have paid less for those treatments and services.

34.     Plaintiff received Defendant MTL's Data Breach Notice dated October 13, 2025, informing her that her Private Information, including her date of birth, dates of collection, email address, gender, address, name, phone number, and tracking number was impacted and exfiltrated in the Data Breach.

35.     As a direct and proximate result of the Data Breach permitted to occur by Defendants, Plaintiff has suffered, and imminently will suffer, injury-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark

CLASS ACTION COMPLAINT - 8

web for sale; Plaintiff has been and will be forced to expend considerable time and effort to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of Defendant MTL's Data Breach Notice and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

36. In addition, because of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property she entrusted to MTL for the sole purpose of obtaining medical services, and that MTL in turn entrusted to Ntirety.

37. Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach.

38. She fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. She is experiencing feelings of anxiety, embarrassment, sleep disruption, stress, and fear because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

39. Plaintiff was highly disturbed by the Data Breach's nature and the thought of cybercriminals accessing her highly sensitive Private Information and the harm caused by the Data Breach. She was also outraged that Defendants took *seven* months to notify her of the Data Breach even as it was discovered on or about March 11, 2025.

40. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as it includes sensitive information that cannot be changed.

41. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the prospect of additional harm.

CLASS ACTION COMPLAINT - 9

**C. This Data Breach Was Foreseeable by Defendants.**

42.     Plaintiff and the proposed Class Members provided their Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

43.     By failing to do so, Defendants put Plaintiff and Class Members at risk of identity theft, financial fraud, and other harms.

44.     Defendants tortiously, or in breach of their implied contracts, failed to take the necessary precautions required to safeguard and protect the Private Information of Plaintiff and the Class Members from unauthorized disclosure. Defendants' actions represent a flagrant disregard of Plaintiff and the other Class Members' rights.

45.     Plaintiff and Class Members were the foreseeable and probable victims of Defendants' inadequate security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing Private Information and the critical importance of providing adequate security for that information.

46.     According to a Chief Strategy Officer at ClearDATA, "[i]t's no secret that healthcare is the industry most plagued by data breaches. Patient data is the most valuable, making it targeted by bad actors."[12]

47.     Moreover, healthcare companies are targeted because of their cybersecurity vulnerabilities: ". . . healthcare is also targeted because it is very vulnerable. Many healthcare providers use outdated IT infrastructure and operating systems that can no longer be patched or supported, such as Windows 7 and Windows Server 2008, even after Microsoft retired them. Further, more than half of medical devices operate on legacy systems, and 83% of medical imaging devices are on outdated operating systems that no longer receive patches/updates. This

---

[12] Sanjay Cherian, Forbes Magazine, "Healthcare Data: The Perfect Storm," January 14, 2022, available at https://www.forbes.com/sites/forbestechcouncil/2022/01/14/healthcare-data-the-perfect-storm/?sh=28523ee56c88 (last visited. Oct. 22, 2025).

CLASS ACTION COMPLAINT - 10

creates significant cybersecurity vulnerabilities and makes it much easier for bad actors to find an entry point into the network." [13]

48.     Cyber-attacks against healthcare organizations such as Defendants are targeted and frequent. According to the 2019 Health Information Management Systems Society, Inc. ("HIMMS") Cybersecurity Survey, "[a] pattern of cybersecurity threats and experiences is discernible across U.S. healthcare organizations. Significant security incidents are a near-universal experience in U.S. healthcare organizations with many of the incidents initiated by bad actors…" [14]

49.     In 2024, 16.97%, of all data compromises targeted the healthcare industry, and healthcare was the second most targeted industry of 2024. [15]

50.     The increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry. According to IBM's 2025 report, "On a long enough timeline, data breaches are inevitable." [16]

51.     According to the U.S. Department for Health and Human Services' "2022 Healthcare Cybersecurity Year in Review, and a 2023 Look-Ahead," "[h]ealthcare data breaches have doubled in 3 years." [17]

52.     Private Information is of great value to hackers and cybercriminals, and the data compromised in the Data Breach can be used for a variety of unlawful and nefarious purposes,

---

[13] *Id.*

[14] HEALTHCARE INFORMATION AND MANAGEMENT SYSTEMS SOCIETY, *2019 HIMSS Cybersecurity Survey*, available at https://www.himss.org/sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report.pdf (last visited Oct. 22, 2025)

[15] See *2024 Data Breach Report*, Identity Theft Resource Center (Jan. 2025) available at https://www.idtheftcenter.org/publication/2024-data-breach-report/ (last accessed October 21, 2025).

[16] IBM, "Cost of a data breach 2025: The AI oversight gap," available at https://www.ibm.com/reports/data-breach (last visited Oct. 22, 2025).

[17] U.S. Department for Health and Human Services, The Health Sector Cybersecurity Coordination Center (HC3), "2022 Healthcare Cybersecurity Year in Review, and a 2023 Look-Ahead," February 9, 2023, avail. at https://www.hhs.gov/sites/default/files/2022-retrospective-and-2023-look-ahead.pdf

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL 206.682.5600 • FAX 206.682.2992

including ransomware and fraudulent misuse, and sale on the Dark Web.

53.    Private Information can be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and medical records. This can be accomplished alone, or in combination with other personal or identifying information that is connected, or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.

54.    Given the nature of the Data Breach, it was foreseeable that the compromised Private Information could be used by hackers and cybercriminals in a variety of different injurious ways.

**D.    Defendants Failed to Comply with FTC Guidelines**

55.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

56.    In 2016, the FTC updated its publication, *Protecting PHI: A Guide for Business*, which establishes cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of Private Information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[18]

---

[18] *See* Federal Trade Commission, October 2016, "Protecting Private information: A Guide for Business," available at https://www.bulkorder.ftc.gov/system/files/publications/2_9-00006_716a_protectingpersinfo-508.pdf (last visited Oct. 22, 2025).

CLASS ACTION COMPLAINT - 12

57.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[19]

58.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

59.     These FTC enforcement actions include actions against entities failing to safeguard Private Information such as Defendants. *See, e.g., In the Matter of LabMD, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

60.     Defendants, including LSVC, failed to implement basic data security practices, including practices that are widely employed throughout the healthcare industry. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Private Information, including LSVC's failure to secure the computer systems where the Private Information was stored, constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

61.     Defendants were at all times fully aware of their obligations to protect Private Information. Defendants were also aware of the significant repercussions that would result from their failure to do so.

---

[19] *See id.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**E.  Defendants Fail to Comply with Industry Standards.**

62.     As shown above, experts studying cyber security routinely identify organizations holding Private Information as being particularly vulnerable to cyber-attacks because of the value of the information they collect and maintain. As of 2025, the global average cost of a data breach rose to $5.08 million, which accounts for a nearly 10% increase since 2021.[20]

63.     A number of industry and national best practices have been published and are widely used as a go-to resource when developing an institution's cybersecurity standards. The Center for Internet Security's (CIS) CIS Critical Security Controls (CSC) recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including 18 Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.[21]

64.     In addition, the National Institute of Standards and Technology (NIST) recommends certain practices to safeguard systems, *infra,* such as:

- Control who logs on to your network and uses your computers and other devices.

- Use security software to protect data.

- Encrypt sensitive data, at rest and in transit.

- Conduct regular backups of data.

---

[20] IBM, "Cost of a data breach 2025: The AI oversight gap available at https://www.ibm.com/reports/data-breach (last visited Oct. 22, 2025).

[21] *See* https://www.rapid7.com/solutions/compliance/critical-controls/ (last visited Oct. 22, 2025).

CLASS ACTION COMPLAINT - 14

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

- Update security software regularly, automating those updates if possible.

- Have formal policies for safely disposing of electronic files and old devices.

- Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.[22]

65.     Upon information and belief, Defendants failed to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, as well as failing to comply with other industry standards for protecting Plaintiff's and Class Members' Private Information, resulting in the Data Breach.

**F.  The Data Breach Caused Plaintiffs and the Class Members Injury and Damages.**

66.     Plaintiff and members of the proposed Class have suffered injury and damages from the unauthorized disclosure of their Private Information in the Data Breach that can be directly traced to Defendants MTL's and Ntirety's failure to adequately protect that Private Information, and Defendant MTL's failures to ensure Defendant Ntirety adequately protected that Private Information, that has occurred, is ongoing, and/or imminently will occur.

67.     As stated prior, in the Data Breach, unauthorized cybercriminals were able to access Plaintiff's and the proposed Class Members' Private Information, which on information and belief is now being used or will imminently be used for fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale, causing widespread injury and damages.

---

[22] Understanding The NIST Cybersecurity Framework, https://www.ftc.gov/business-guidance/small-businesses/cybersecurity/nist-framework (last visited Oct. 22, 2025).

CLASS ACTION COMPLAINT - 15

68.     The ramifications of Defendants' failure to keep Plaintiff's and the Class's Private Information secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, driver's license number, date of birth, or other information, such as addresses, without permission, to commit fraud or other crimes.

69.     Because Defendants collectively failed to prevent the Data Breach, Plaintiff and the proposed Class Members have suffered, will imminently suffer, and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the Class Members have suffered, are at an increased risk of suffering, or will imminently suffer: dissemination of that Private Information, including said information being posted on the Dark Web for fraudulent, criminal activity or sale;

  a. fraudulent misuse of Private Information, including fraudulent loans taken out using Private Information acquired in the Data Breach, fraudulent cellular telephone accounts taken out using Private Information acquired in the Data Breach; and, identity theft and impersonation using Private Information acquired in the Data Breach;

  b. Targeted phishing, malware, and increase in spam emails, texts, and calls which are attempts to acquire further information to be used for fraud and identity theft;

  c. The loss of the opportunity to control how their Private Information is used;

  d. The diminution in value of their Private Information;

  e. The compromise and continuing publication of their Private Information;

  f. Out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

  g. Lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

  h. Emotional Distress;

CLASS ACTION COMPLAINT - 16

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

i.   Delay in receipt of tax refund monies;

j.   Unauthorized use of stolen Private Information; and

k.   The continued risk to their Private Information, which remains in the possession of Defendants and is subject to further breaches so long as MTL fails to undertake the appropriate measures to protect the Private Information in its possession, and Defendant MTL to ensure Ntirety undertakes these measures.

70.    Furthermore, the Data Breach has placed Plaintiff and the proposed Class Members at an increased risk of fraud and identity theft.

71.    There are myriad dangers which affect victims of identity theft, including: cybercriminals opening new financial accounts, credit cards, and loans in victim's names; victim's losing health care benefits (medical identity theft); hackers taking over email and other accounts; time and effort to repair credit scores; losing home due to mortgage and deed fraud; theft of tax refunds; hackers posting embarrassing posts on victim's social media accounts; victims spending large amounts of time and money to recover their identities; experiencing psychological harm and emotional distress; victims becoming further victimized by repeat instances of identity theft and fraud; cybercriminals committing crimes in victim's names; victims' personal data circulating the Dark Web forever; victims receiving increased spam telephone calls and emails; victims' children or elderly parents having their identities stolen.[23]

72.    The FTC recommends that identity theft victims take several costly steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, seeking a credit freeze, and correcting their credit reports.[24]

---

[23] *See* Gaetano DiNardi, Aura.com, "How Bad Is Identity Theft? Is It Serious?" (December 14, 2022) available at https://www.aura.com/learn/dangers-of-identity-theft#:~:text=Fraudsters%20can%20open%20new%20accounts,to%20repair%20your%20credit%20score (last visited Oct. 22, 2025).

[24] *See* https://www.identitytheft.gov/Steps (last accessed September 1, 2021).

CLASS ACTION COMPLAINT - 17

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

73. The time-consuming process recommended by the FTC and other experts is complicated by the vulnerable situations of Plaintiff and Class Members.

74. Identity thieves use stolen Private Information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

75. Further, according to the Identity Theft Resource Center's 2021 Consumer Aftermath Report, identity theft victims suffer "staggering" emotional tolls: For example, nearly 30% of victims have been the victim of a previous identity crime; an all-time high number of victims say they have contemplated suicide. Thirty-three percent reported not having enough money to pay for food and utilities, while 14% were evicted because they couldn't pay rent or their mortgage. Fifty-four percent reported feelings of being violated. [25]

76. What's more, theft of Private Information is also gravely serious outside of the traditional risks of identity theft. In the last two decades, as more and more of our lives become interconnected through the lens of massively complex cloud computing, Private Information is a valuable property right.[26]

77. The value of sensitive information is axiomatic; one need only consider the value of Big Data in corporate America, or that the consequences of cyber theft include heavy prison sentences. Even the obvious risk to reward analysis of cybercrime illustrates beyond doubt that Private Information has considerable market value.

78. Theft of Private Information, in particular, is problematic because: "A thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims

---

[25] *See* Jason Steele, *Credit Card and ID Theft Statistics*, CreditCards.com (June 11, 2021), avail. at https://www.creditcards.com/statistics/credit-card-security-id-theft-fraud-statistics-1276/ citing Identity Theft Resource Center, "2021 Consumer Aftermath Report," May 26, 2021 available at https://www.idtheftcenter.org/post/the-identity-theft-resource-centers-2021-consumer-aftermath-report-reveals-impacts-on-covid-19-identity-crime-victims/ (last visited Oct. 22, 2025).

[26] *See, e.g.*, John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("Private information") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("Private information, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

CLASS ACTION COMPLAINT - 18

with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[27]

79.    Drug manufacturers, medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase Private Information on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed Private Information to adjust their insureds' medical insurance premiums.

80.    It must also be noted there may be a substantial time lag–measured in years– between when harm occurs versus when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used.

81.    Private Information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

82.    There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and the Class Members are at an increased risk of fraud and identity theft for many years into the future.

83.    Thus, Plaintiff and the Class Members must vigilantly monitor their medical accounts for many years to come.

84.    According to cybersecurity experts, "[r]eports show the value of a health record can be worth as much as $1,000, whereas on the dark web, a credit card number is worth $5."[28]

85.    Plaintiff's and Class Members' Private Information, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at

---

[27] *See Medical Identity Theft, Federal Trade Commission Consumer Information,* http://www.consumer.ftc.gov/articles/0171-medical-identity-theft (last visited Oct. 22, 2025).

[28] Sanjay Cherian, Forbes Magazine, "Healthcare Data: The Perfect Storm," January 14, 2022, available at https://www.forbes.com/sites/forbestechcouncil/2022/01/14/healthcare-data-the-perfect-storm/?sh=28523ee56c88 (last visited Oct. 22, 2025).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[29] Medical information is especially valuable to identity thieves. The asking price on the Dark Web for medical data is $50 per person and up.[30]

86. Accordingly, the Data Breach has caused Plaintiff and the proposed Class Members a greatly increased risk of identity theft and fraud, in addition to the other injuries and damages set forth herein, specifically the imminent identity fraud and criminal fraudulent activity; lost time and efforts in remediating the impact of the Data Breach, and other injury and damages as set forth in the preceding paragraphs.

87. Defendants knew or should have known of these harms which would be caused by the Data Breach they permitted to occur, and Defendants MTL and Ntirety should have strengthened their data systems accordingly, and Defendant MTL should have ensured that Defendant Ntirety did so before Plaintiff and the Class Members entrusted them with their Private Information.

## CLASS ACTION ALLEGATIONS

88. Plaintiff brings this action on behalf of herself, and on behalf of all other persons similarly situated (the "Class"):

> **Nationwide:** All residents of the United States identified by Defendants (or their agents or affiliates) as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach (the "Nationwide Class")

89. Excluded from the Class are Defendants' officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are

[29] *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, Tim Greene, Feb. 6, 2015, http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited June 19, 2025).

[30] *See* Omri Toppol, *Email Security: How You Are Doing It Wrong & Paying Too Much*, LogDog (Feb. 14, 2016), https://getlogdog.com/blogdog/email-security-you-are-doing-it-wrong/ (last visited June 19, 2025).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

members of the judiciary to whom this case is assigned, their families and Members of their staff.

90.    Plaintiff reserves the right to amend or modify the Class definitions as this case progresses.

91.    <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of individuals whose sensitive data was compromised in the Data Breach.

92.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.    if Defendants unlawfully used, maintained, lost, or disclosed Plaintiff and Class Members' Private Information;

    b.    if Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.    if Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    d.    if Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

    e.    if Defendants owed a duty to Class Members to safeguard their Private Information;

    f.    if Defendants breached their duty to Class Members to safeguard their Private Information;

    g.    if Defendants knew or should have known that their data security systems and monitoring processes were deficient;

    h.    if Defendants should have discovered the Data Breach sooner;

    i.    if Plaintiff and Class Members suffered legally cognizable damages as a result of Defendants' misconduct;

CLASS ACTION COMPLAINT - 21

j. if Defendants' conduct was negligent;

k. if Defendants breached implied contracts with Plaintiff and Class Members;

l. if Defendants were unjustly enriched by unlawfully retaining a benefit conferred upon them (directly or indirectly) by Plaintiff and Class Members;

m. if Defendants failed to provide notice of the Data Breach in a timely manner, and;

n. if Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

93. <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was compromised in the Data Breach.

94. <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

95. <u>Predominance</u>. Defendants have engaged in a common course of conduct toward Plaintiff and Class Members, in that the Plaintiff's and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

96. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible

CLASS ACTION COMPLAINT - 22

standards of conduct for Defendants. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

97.    Defendants have acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

98.    Likewise, particular issues under Rule 42(d)(l) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.    if Defendants failed to timely notify the public of the Data Breach;

b.    if Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

c.    if Defendants' security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d.    if Defendants' failure to institute adequate protective security measures amounted to negligence;

e.    if Defendants failed to take commercially reasonable steps to safeguard consumer PII; and

f.    if adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

99.    Finally, all members of the proposed Class are readily ascertainable. At least some of the Defendants have access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by MTL.

CLASS ACTION COMPLAINT - 23

1

2

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Nationwide Class)

3

4

100.     Plaintiff repeats and re-alleges paragraphs 1 through 99 of this Complaint and incorporates them by reference herein.

5

6

101.     Plaintiff and the Class Members entrusted their Private Information (directly or indirectly) to Defendants.

7

8

9

10

11

102.     Defendants owed Plaintiff and Class Members a duty to exercise reasonable care in handling and using the Private Information in their care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

12

13

14

103.     Further, MTL owed Plaintiff and Class Members a duty to exercise reasonable care in supervising third-party vendors to ensure that their Private Information was adequately protected.

15

16

17

18

19

20

21

22

23

104.     Defendants owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendants' failure to collectively adequately safeguard the Private Information in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that Private Information—just like the Data Breach that ultimately came to pass. Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' Private Information by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

24

25

26

105.     Defendants owed to Plaintiff and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their Private Information. Defendants also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the

CLASS ACTION COMPLAINT - 24

scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

106.    Defendants owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact due to Defendants inadequate security protocols. Defendants sought and obtained Plaintiff and members of the Class's Private Information.

107.    The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendants hold vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access their databases containing the Private Information—whether by a sophisticated cyberattack or otherwise.

108.    Private Information is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff and Class Members and the importance of exercising reasonable care in handling it, and of Defendant MTL's supervision of third-party vendors' handling of that information.

109.    Defendants breached their duties by failing to exercise reasonable care in supervising their agents, employees, contractors, vendors, and suppliers, and Defendants breached their duties in handling and securing the Personally Information of Plaintiff and Class Members, which actually and proximately caused the Data Breach and Plaintiff's and Class Members' injury-in-fact and damages.

110.    Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class

CLASS ACTION COMPLAINT - 25

Members' injuries-in-fact.

111.    As a direct, proximate, and traceable result of Defendants' negligence, Plaintiff has suffered or will imminently suffer injury-in-fact and damages, as set forth in the preceding paragraphs.

112.    Defendants' breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including: exposure of that Private Information, including being posted on the Dark Web for fraudulent, criminal activity or sale;  loss of the opportunity to control how Private Information is used; diminution in value of their Private Information; compromise and continuing publication of their Private Information; out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud; lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; emotional distress; delay in receipt of tax refund monies; unauthorized use of stolen Private Information; the continued risk to their Private Information, which remains in the possession of Defendants and is subject to further breaches so long as Defendants' fail to undertake the appropriate measures to protect the Private Information in their possession; and, an increased risk of fraud and identity theft.

113.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's Private Information.

114.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect customers or, in this case, patients' PII. The FTC publications and orders promulgated pursuant to the FTC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    Act also form part of the basis of Defendants' duty to protect Plaintiffs and the members of the

2    Class's sensitive Private Information.

3        115.    Defendants violated their respective duties under Section 5 of the FTC Act and

4    HIPAA by failing to use reasonable measures to protect Plaintiff's and the Class's Private

5    Information and not complying with applicable industry standards as described in detail herein.

6    Defendants' conduct was particularly unreasonable given the nature and amount of Private

7    Information Defendants had collected and stored and the foreseeable consequences of a data

8    breach, including, specifically, the immense damages that would result to patients in the event

9    of a breach, which ultimately came to pass.

10        116.    The harm that has occurred is the type of harm the FTC Act is intended to guard

11    against. Indeed, the FTC has pursued numerous enforcement actions against businesses that,

12    because of their failure to employ reasonable data security measures and avoid unfair and

13    deceptive practices, caused the same harm as that suffered by Plaintiff and the Class Members.

14        117.    Defendants had a duty to Plaintiff and the Class Members to implement and

15    maintain reasonable security procedures and practices to safeguard Plaintiff's and the Class's

16    Private Information, and to supervise third-party vendors, to ensure they did the same.

17        118.    Defendants breached their respective duties to Plaintiff and members of the

18    Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems

19    and data security practices to safeguard Plaintiff's and members of the Class's Private

20    Information.

21        119.    Defendants' violation of Section 5 of the FTC Act and its failure to comply with

22    applicable laws and regulations including HIPAA constitutes negligence *per se*.

23        120.    As a result of the negligence of Defendants, Plaintiff and the Class Members are

24    entitled to recover actual, compensatory, and punitive damages.

25        121.    Plaintiff and Class Members are also entitled to injunctive relief requiring

26    Defendants to (i) properly notify affected victims of the Data Breach (ii) strengthen their data

CLASS ACTION COMPLAINT - 27

security systems and monitoring procedures; (iii) submit to future annual audits of those systems and monitoring procedures; and (iv) provide adequate credit monitoring to all Class Members.

122.    Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class Members in that the Private Information maintained by Defendants can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and the Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the exposure of the Private Information of Plaintiff and the Class Members.

## <u>COUNT II</u>
### BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Nationwide Class)

123.    Plaintiff repeats and re-alleges paragraphs 1 through 99 of this Complaint and incorporates them by reference herein.

124.    Plaintiff brings this count individually and on behalf of the Class against Defendant MTL ("Defendant" for the purposes of this Count).

125.    Defendant offered to provide services to Plaintiff and the Class Members in exchange for their Private Information and in exchange for amounts paid for medical treatment and services that included payment for data security.

126.    Defendant entrusted the Private Information of Plaintiff and the proposed Class Members to third-party vendors.

127.    Plaintiff and the Class Members accepted Defendant's offer by providing Private Information to Defendant, and in turn to third-party vendors, in exchange for medical services.

128.    In turn, and through internal policies described in the preceding paragraphs, and other conduct and representations, Defendant agreed it would not disclose the Private Information they collect to unauthorized persons and that they would safeguard patient Private

CLASS ACTION COMPLAINT - 28

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    Information.

2         129.    Implicit in the parties' agreement was that Defendant would provide Plaintiff

3    and the Class Members with prompt and adequate notice of all unauthorized access and/or theft

4    of their Private Information.

5         130.    Plaintiff and the Class Members would not have entrusted their Private

6    Information to Defendant in the absence of such an agreement.

7         131.    Defendant materially breached the contract(s) it had entered into with Plaintiff

8    and the Class Members by failing to safeguard their Private Information, including the failure

9    to supervise third-party vendors to ensure Private Information was properly safeguarded, and

10   by failing to notify Plaintiff and Class Members promptly of the Data Breach. Defendant

11   further breached the implied contracts with Plaintiff and the Class Members by:

12         a.    Failing to comply with industry standards as well as legal obligations
13               that are necessarily incorporated into the parties' agreement; and

14         b.    Failing to ensure the confidentiality and integrity of electronic Private
15               Information that Defendant created, received, maintained, and
                 transmitted.

16        132.    The damages sustained by Plaintiff and members of the Class as described

17   above were the direct and proximate result of Defendant's material breaches of its

18   agreement(s).

19        133.    Plaintiff and the Class Members have performed as required under the relevant

20   agreements, or such performance was waived by the conduct of Defendant.

21        134.    The covenant of good faith and fair dealing is an element of every contract. All

22   such contracts impose upon each party a duty of good faith and fair dealing. The parties must

23   act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in

24   connection with executing contracts and discharging performance and other duties according to

25   their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently,

26   the parties to a contract are mutually obligated to comply with the substance of their contract in

CLASS ACTION COMPLAINT - 29

1    addition to its form.

2    135.    Subterfuge and evasion violate the obligation of good faith in performance even

3    when an actor believes their conduct to be justified. Bad faith may be overt or may consist of

4    inaction, and fair dealing may require more than honesty.

5    136.    Defendant failed to advise Plaintiff and members of the Class of the Data

6    Breach promptly and sufficiently.

7    137.    In these and other ways, Defendant violated its duties of good faith and fair

8    dealing.

9    138.    Plaintiff and the Class Members have sustained injury-in-fact and damages

10   because of Defendant's breaches of its agreements, including breaches thereof through

11   violations of the covenant of good faith and fair dealing.

12   139.    As a direct and proximate result of Defendant's breach of implied contract,

13   Plaintiff and the proposed Class Members and are entitled to actual, compensatory, and

14   consequential damages.

15                         **<u>COUNT III</u>**
                    **THIRD-PARTY BENEFICIARY**
16              **(On Behalf of Plaintiff and the Nationwide Class)**

17
18   140.    Plaintiff repeats and re-alleges paragraphs 1 through 99 of this Complaint and

19   incorporates them by reference herein.

20   141.    Plaintiffs and the proposed Class Members are third-party beneficiaries of

21   contracts between MTL and Ntirety, under which MTL and Ntirety: received Plaintiff's and the

22   Class's Private Information and stored that information in their computer network systems; and

23   under which MTL provided medical diagnostic services to its healthcare clients.

24   142.    Plaintiff and the proposed Class Members, in connection with receiving services

25   from MTL, were the intended beneficiaries of these contracts, in that the contracts all related to

26   the provision of services to Plaintiff and the Class.

     143.    Defendants breached the foregoing contracts by failing to adequately protect

CLASS ACTION COMPLAINT - 30

Plaintiff's and the Class Members' Private Information, resulting in the Data Breach, and injury-in-fact and damages.

144.    Defendants each materially breached the contract(s) each had entered into by failing to safeguard the Private Information entrusted to them, including by Defendant MTL to properly supervise third-party vendors to ensure they safeguarded Plaintiff's and Class Members' Private Information, and including breaches of the covenant of good faith and fair dealing.

145.    As a direct and proximate result, Plaintiff and Class Members are entitled to actual, compensatory, and consequential damages.

**<u>COUNT IV</u>**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

146.    Plaintiff repeats and re-alleges paragraphs 1 through 99 of this Complaint and incorporates them by reference herein.

147.    This claim is pleaded as the alternative to the breach of implied contractual duty claim.

148.    Plaintiff and Class Members conferred a benefit upon MTL in the form of monies paid for MTL's services and their Private Information. Plaintiff and Class Members conferred a benefit on MTL and Ntirety where some of the monies they paid to MTL were in turn paid to Ntirety, along with Plaintiff's and Class Members' Private Information.

149.    Defendants appreciated or had knowledge of the benefits conferred upon themselves (directly or indirectly) by Plaintiff and the Class Members.

150.    As a result of Defendants' conduct, Plaintiff and members of the Class suffered actual damages in an amount equal to the difference in value between the purchases made with reasonable data privacy and security practices and procedures that Plaintiff and the Class Members paid for, and the purchases without reasonable data privacy and security practices and procedures that they received.

CLASS ACTION COMPLAINT - 31

151.    Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff and the proposed Class Members' payments and their Private Information, because Defendants all failed to adequately protect the Private Information, and because Defendant MTL failed to properly supervise Ntirety to ensure Plaintiff's and the Class Members' Private Information was protected. Plaintiff and the Class Members would not have provided their Private Information, nor used and paid for MTL's services, had they known MTL and the vendor it chose would not adequately protect their Private Information.

152.    Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and the Data Breach alleged herein.

## PRAYER FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated individually, requests that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing Plaintiff's counsel to represent the Class;

B.    Awarding Plaintiff and the Class damages that include applicable compensatory, actual, exemplary, and punitive damages, as allowed by law;

C.    Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

D.    Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

E.    Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

CLASS ACTION COMPLAINT - 32

F.      Awarding attorneys' fees and costs, as allowed by law;

G.      Awarding prejudgment and post-judgment interest, as provided by law;

H.      Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

I.      Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 23, 2025              Respectfully submitted,


                                    TOUSLEY BRAIN STEPHENS PLLC


                                    */s/Joan M. Pradhan*
                                    Joan M. Pradhan, WSBA #58134
                                    jpradhan@tousley.com
                                    1200 Fifth Avenue, Suite 1700
                                    Seattle, WA 98101
                                    Tel: (206) 682-5600/Fax: (206) 682-2992

                                    *s/Andrew J. Shamis*
                                    Andrew J. Shamis, WSBA #61955
                                    **SHAMIS & GENTILE, P.A.**
                                    14 NE 1st Avenue, Suite 705
                                    Miami, Florida 33132
                                    Tel: (305) 479-2299
                                    ashamis@shamisgentile.com


                                    *Counsel for Plaintiff and Proposed Class*

CLASS ACTION COMPLAINT - 33